IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THEODORE S. FASCA,<br><br>        *Defendant.* | Case No. 3:23-cr-83 |

## STATEMENT OF FACTS

The United States and the defendant, THEODORE S. FASCA (hereinafter, "the defendant"), stipulate that the allegations contained in Count 1 of the Criminal Information and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt.

## BACKGROUND

### *Defendant, Co-Conspirators, and Victims*

1. At all times relevant to the conspiracy, THEODORE S. FASCA was a resident of Richmond, Virginia, within the Eastern District of Virginia. From in or about 2005, and continuing through in or about August 2020, FASCA worked at Dominion Energy, Inc., a Virginia-based utility company that provides electricity to four million customers in Virginia, North Carolina, and South Carolina (together with its subsidiaries, "Dominion"). From 2008 and continuing through December 2019, FASCA was a manager in Dominion's Generation System Planning group, which focused on positioning Dominion to meet future customer energy needs. From in or about December 2019, and continuing through his date of resignation in or about

1

August 2020, FASCA worked as the director of the Generation System Planning group at Dominion.

2. At all times relevant to the conspiracy, COMPANY 1 was a global industrial manufacturing conglomerate (together with its subsidiaries, "COMPANY 1").

3. At all times relevant to the conspiracy, CO-CONSPIRATOR 1 ("CC-1") was a Regional Account Manager for COMPANY 1. In his role at COMPANY 1, CC-1 was responsible for COMPANY 1's sales to Dominion.

4. General Electric Company was an American multinational conglomerate based in Boston, Massachusetts (together with its subsidiaries, "GE").

5. Mitsubishi Heavy Industries, Ltd. was an engineering and electrical equipment manufacturer headquartered in Tokyo, Japan (together with its subsidiaries, "MHI").

### *Peaker Power Project Background*

6. In approximately March 2019, Dominion sought to build a "Peaker" gas turbine plant in Chesterfield, Virginia, within the Eastern District of Virginia. Peaker plants are combustion turbine plants designed to add electricity generation capacity to alleviate high grid load and improve electric grid resiliency. To build the Peaker Power plant, Dominion opened a competitive, closed bid process soliciting requests for proposals from qualified companies. The bid process involved such qualified companies not only providing the equipment for the Peaker Power plant project, but also providing long-term agreements for servicing any equipment provided. In total, the project was estimated to cost Dominion upwards of $500 million.

Non-Disclosure Agreements

7. As part of the closed bid solicitation process, GE and MHI each executed separate reciprocal non-disclosure agreements ("NDAs") with Dominion, governing the use and

2

disclosure of confidential and proprietary information exchanged throughout the bid process. On or about February 28, 2019, GE and Dominion executed an NDA. Thereafter, on or about March 7, 2019, MHI and Dominion executed an NDA with similar terms to the agreement with GE.

8. The GE and MHI NDAs with Dominion both defined "Confidential Information" as: "[A]ll information of whatever nature, whether or not patentable or copyrightable, in any format relating to the Purpose."[1] The definition of Confidential Information under the NDA further encompassed "all information disclosed to either party that is considered confidential to the disclosing party, including without limitation proprietary technical and business information, trade secrets, . . .formulae, . . .financial information, . . .and any other information designated by the Disclosing Party as confidential or proprietary."

9. The definition of "Confidential Information" expressly excluded "information that: (a) at the time of disclosure by Disclosing Party, was in the public domain; (b) after disclosure by the Disclosing Party is lawfully published or otherwise becomes part of the public domain; (c) was in the Receiving Party's possession at the time of disclosure to the Receiving Party and was not acquired by the Receiving Party, directly or indirectly, under an obligation of confidence; or (d) after disclosure to the Receiving Party, is received by the Receiving Party from a third party who did not acquire it under an obligation of confidence."

10. The NDAs required each party to: "(a) protect Confidential Information from disclosure as if it were its own confidential and proprietary information; (b) not directly or indirectly, without express written permission of the Disclosing Party, use any of the Disclosing

---

[1] The "Purpose" was defined as "limited...[to] facilitating discussions and possible negotiations related to a transaction between Dominion Energy Virginia and [GE and MHI, respectively] for the supply of combustion turbines. . . and for no other purpose."

3

Party's Confidential Information for any purpose other than the limited purpose of evaluating a potential future contractual relationship as described above; (c) ensure that each of its officers, directors, employees, consultants and legal counsel…abide by the obligations of this Agreement…and (g) not use Disclosing Party's Confidential Information to prepare to compete, compete, or induce or assist others to compete with the Disclosing Party."

11. COMPANY 1 and Dominion executed an NDA on or about August 14, 2018.

12. The NDA stated that "in order to analyze and evaluate the Project, the Parties need to exchange certain confidential and proprietary information" and "each Party is willing to make such disclosure only pursuant to the terms of this Agreement."

13. The NDA further defined "Confidential Information" as "any information that is owned or controlled by the Disclosing Party. It also includes information of third parties in possession of Disclosing Party that Disclosing Party is obligated to maintain in confidence."

Initial Submittal of Bids to Dominion

14. GE, MHI, and COMPANY 1 all submitted bids in response to a request for proposal issued by Dominion for the Peaker Power plant project on or about May 10, 2019.

**COUNT ONE: CONSPIRACY TO COMMIT WIRE FRAUD**

15. The allegations in the preceding paragraphs, including sub-paragraphs, are re-alleged and incorporated as though set forth in full here.

*Statutory Language*

16. THEODORE S. FASCA and other co-conspirators, known and unknown, beginning at a time unknown, but no later than on or about May 23, 2019, and continuing through in or about June 2019, in the Eastern District of Virginia and elsewhere, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown, to

4

commit offenses against the United States, to wit: Wire fraud, that is, to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitted and caused transmission of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

### *Purpose of the Conspiracy*

17. The purpose of the conspiracy was for FASCA and his co-conspirators, known and unknown, to: (1) unlawfully enrich COMPANY 1; (2) cause economic harm to GE and MHI; (3) deprive GE and MHI of their rights to the exclusive use of their respective confidential information[2]; and (4) to effectuate an illicit conversion and conveyance of confidential GE and MHI information to COMPANY 1.

### *The Ways, Manner, and Means of the Conspiracy*

18. The ways, manner, and means by which FASCA and his co-conspirators sought to accomplish the conspiracy included, but were not limited to, the following:

   a. CC-1 solicited confidential information of GE and MHI from FASCA to gain an advantage during the closed bid process for the Peaker Power plant. FASCA thereafter used his sensitive position of trust within Dominion to

---

[2] Further references to "confidential information" refer to: (1) information that was not in the public domain; (2) information that was only disclosed to Dominion (by GE and MHI, respectively) pursuant to NDAs; (3) information for which GE and MHI took steps to preclude widespread disclosure; (4) information over which GE and MHI, respectively, had the exclusive right to determine when and to what extent such information was disclosed publicly, if at all; (5) information that derived independent economic value from not being in the public domain; and (6) information that encompassed trade secrets, confidential information, and proprietary business information.

5

obtain confidential information of GE and MHI and to provide such information to CC-1.

b. At times, FASCA provided confidential information of GE and MHI to CC-1 without solicitation.

c. FASCA and CC-1 organized to funnel the confidential information of GE and MHI through numerous private email accounts (including through CC-1's wife's Hotmail email address, FASCA's personal Google email address, and CC-1's personal Yahoo address) to conceal the illicit disclosure of confidential information. FASCA and CC-1's wife had not previously communicated via email.

d. CC-1 and other co-conspirators thereafter strategically disseminated the confidential information throughout COMPANY 1 to gain an advantage during the closed bid process, to COMPANY 1's benefit and GE and MHI's concomitant detriment, including sending certain confidential information to representatives of COMPANY 1's parent company in Germany. Such dissemination was calculated to: (1) improve COMPANY 1's business intelligence; and (2) provide COMPANY 1 with a competitive advantage in the bid for the Dominion Peaker Project and in future bids against GE and MHI.

e. At all times, FASCA, CC-1, and their co-conspirators, and COMPANY 1 knew (or remained willfully blind to) the fact that the disclosed information was confidential information and information COMPANY 1 was not entitled to have.

f.  COMPANY 1 used the improperly derived confidential information to refine and resubmit a lower bid for the Dominion Peaker Project on or about May 30, 2019.

g.  Through at least in or about June 20, 2019, FASCA and CC-1 continued to coordinate in furtherance of the conspiracy, and FASCA continued to provide CC-1 with confidential information that CC-1 subsequently transferred to co-conspirators and COMPANY 1. Co-conspirators and COMPANY 1 subsequently used that information to the detriment of GE and MHI in the ongoing competitive bidding process..

***Overt Acts in Furtherance of the Conspiracy***

First Disclosures of Confidential Information & COMPANY 1 Rebid

19. On or after May 10, 2019, CC-1 called FASCA to inquire into "the numbers" of GE and MHI's bids for the Peaker Power plant project to ascertain whether COMPANY 1's bid was competitive. After FASCA stated that he did not know, CC-1 asked FASCA to find out. As FASCA and CC-1 well knew, CC-1 was asking for confidential information of GE and MHI.

20. Thereafter, FASCA provided CC-1 over the phone with the top line bid amounts by GE and MHI. Those top line bid amounts, as FASCA and CC-1 well knew, constituted confidential information.

21. On or about May 23, 2019, at CC-1's request, FASCA emailed documents containing confidential information of GE and MHI from his Dominion email address to his personal Google email address and subsequently from this Google email address to CC-1's wife's Hotmail email address.

22. CC-1 then forwarded the email from his wife's Hotmail email address to his own Yahoo email address and subsequently to his email address with COMPANY 1.

23. These transmissions caused electronic wirings between the Eastern District of Virginia and states outside of Virginia (including to and through Yahoo servers in California).

24. The confidential information contained in these documents encompassed unit pricing details for the sale of various numbers of combustion turbines, turbine emissions specifications, and options pricing for various features that improve turbine efficiency and output capacity. Thereafter, CC-1 strategically disseminated this confidential information to various other co-conspirators within COMPANY 1.

25. Based on confidential information derived from FASCA, CC-1 and other individuals at COMPANY 1 believed that GE had a more competitive bid offer by $7.5 million. As a result, on or about May 30, 2019, COMPANY 1 submitted a revised bid offer to Dominion, reducing their price by bidding below GE's bid.

Subsequent Solicitations, Disclosures of Confidential Information, and Bid Award

26. On or about May 31, 2019, FASCA sent additional confidential information from his Dominion email address to his personal Google email address and subsequently from the Google email address to CC-1's wife's Hotmail email address. CC-1 then forwarded the information from his wife's Hotmail email address to CC-1's own Yahoo email address. These transmissions caused electronic wirings between the Eastern District of Virginia and states outside of Virginia (including to and through Yahoo servers in California). The confidential information consisted of volume discount pricing and shipping costs for combustion turbines and power-pricing parameters of the combustion turbines. Thereafter, CC-1 disseminated this confidential information to various other co-conspirators within COMPANY 1.

27. On or about June 1, 2019, FASCA asked CC-1, "Text me [CC-1's wife's] email again please." Thereafter, on or about June 3, 2019, FASCA sent additional confidential information from his Dominion email address to his personal Google email address and subsequently from his personal Google email address to CC-1's wife's Hotmail email address. CC-1 then forwarded the confidential information from his wife's email address to his own Yahoo email address. These transmissions caused electronic wirings between the Eastern District of Virginia and states outside of Virginia (including to and through Yahoo servers in California). The confidential information consisted of output capacity and capital costs for combustion turbines as well as options pricing for several combustion turbine features. Thereafter, CC-1 disseminated this confidential information to various other co-conspirators within COMPANY 1.

28. Thereafter, on or about June 14, 2019, FASCA sent additional confidential information from his Dominion email address to his personal Google email address and subsequently from his personal Google email address to CC-1's email address with COMPANY 1. The confidential information consisted of GE's proprietary methodology for calculating the maintenance intervals for combustion turbines as applied to the Peaker Project as well as the long term service agreement pricing breakdown for parts, labor, and various optional features. Thereafter, CC-1 strategically disseminated this confidential information to various other co-conspirators within COMPANY 1 who had a role in COMPANY 1's bid process for the Peaker Power plant project.

29. Also on June 14, 2019, FASCA sent additional confidential information from his Dominion email address to his personal Google email address and subsequently from his Google email address to CC-1's email address with COMPANY 1. The confidential information

9

consisted of an MHI proposal for bundling Peaker Project work with other work between MHI and Dominion, among other things. Thereafter, CC-1 disseminated this confidential information to various other co-conspirators within COMPANY 1.

30. On June 20, 2019, FASCA sent additional confidential information from his Dominion email address to his personal Google email address and subsequently from his personal Google email address to CC-1's email address with COMPANY 1. The confidential information consisted of Dominion's analysis of the turbine capital cost of each bid. Thereafter, CC-1 disseminated this confidential information to various other co-conspirators within COMPANY 1.

31. On June 20, 2019, FASCA sent additional confidential information from his Dominion email address to his personal Google email address and subsequently from his personal Google email address to CC-1's email address with COMPANY 1. The confidential information consisted of MHI's revised bid. Notably, this document was marked "MHPS Proprietary & Confidential Information." Thereafter, CC-1 disseminated this confidential information to various other co-conspirators within COMPANY 1.

32. COMPANY 1 won the bid for the Peaker Project with Dominion. CC-1 thereafter informed FASCA that COMPANY 1 had won the bid and thanked FASCA.

FASCA's Statements Regarding Disclosure

33. In a sworn deposition on or about July 20, 2021, FASCA acknowledged that he knew the above-described information he sent to CC-1 was confidential information, submitted by bidders as part of a confidential and sensitive bid process. In a sworn declaration that FASCA signed on or about February 1, 2021, FASCA stated: "I believe my efforts helped [COMPANY 1]."

\* \* \*

34. FASCA did not financially benefit from his involvement in the conspiracy.

35. For the purpose of calculating FASCA's advisory range under the United States Sentencing Guidelines, the parties stipulate that the losses to victims reasonably foreseeable to FASCA were between $9.5 million and $25 million. However, FASCA acknowledges that the actual losses to victims as a result of FASCA and his co-conspirators' actions exceed the losses that were reasonably foreseeable to FASCA. FASCA acknowledges that this stipulation is not binding on the Court or the probation office, and that he will not be permitted to withdraw his plea if the loss calculations ultimately adopted by the Court at sentencing differ from this stipulation.

36. The actions of the defendant, as recounted above, were taken willfully, knowingly, and with the specific intent to violate the law. The defendant did not take those actions by accident, mistake, or with the belief that they did not violate the law. This statement of facts sets forth facts necessary to support the defendant's plea of guilty. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Avi Panth
Michael R. Gill
Kenneth R. Simon, Jr.
Assistant United States Attorneys

I have consulted with my attorney regarding this Statement of Facts. I knowingly and voluntarily agree that each of the above-recited facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt.

7/26/2023
Date

*Theodore S. Fasca*
THEODORE S. FASCA
Defendant

I am counsel for defendant, THEODORE S. FASCA. I have carefully reviewed this Statement of Facts with him and, to my knowledge, his decision to agree to this Statement of Facts is an informed and voluntary decision.

7·26·23
Date

Robert Wagner
Counsel